# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK J. LEWIS<br>8 Plumtree Turn<br>Levittown, PA 19056<br><br>Plaintiff,<br><br>v.<br><br>BRIGHTVIEW LANDSCAPE SERVICES, INC.<br>980 Jolly Road, Suite 300<br>Blue Bell, PA 19422<br><br>Defendant. | CIVIL ACTION<br><br>DOCKET NO.: _____<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Patrick J. Lewis (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against BrightView Landscape Services, Inc. (hereinafter referred to as "Defendant," unless indicated otherwise) for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq*.).[1] Plaintiff asserts, *inter alia*, that he was subjected to discrimination; retaliation; and was unlawfully terminated from his employment with Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff also has a charge of discrimination pending with the Pennsylvania Human Relations Commission ("PHRC") for violations of the Pennsylvania Human Relations Act ("PHRA"). Plaintiff intends to amend the instant lawsuit to include claims pursuant to the PHRA if and when such claims are administratively exhausted with the PHRC. Plaintiff's PHRA claims will mirror his ADA claims as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights under the ADA.

3. This Court, in accordance with 28 U.S.C. § 1332, also has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of California, and the amount in controversy exceeds $75,000.

4. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

5. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

6. Plaintiff is proceeding herein under the ADA and has properly exhausted his administrative remedies by timely filing a Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

7. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8. Plaintiff is an adult individual, with an address as set forth in the caption.

9. Defendant is a nationwide commercial landscaping company, incorporated in California.

10. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was hired by Defendant effective on or about February 15, 2023, as a Maintenance Crew Leader. Plaintiff was employed by Defendant for almost two (2) months, until his termination effective on or about April 10, 2023.

13. During Plaintiff's employment, he was supervised by management including but not limited to, Chris Wiesen (Branch Manager), Alberto (Field Manager) and Andy (Operations Manager).

14. On or about April 4, 2023, Plaintiff was riding in the backseat of one of Defendant's trucks wherein the landscaping crew was driving to the next site.

15. This particular crew frequently smoked marijuana at other sites (including at clientele's sites), but this was the first time it was causing Plaintiff to directly inhale the unlawful drug.

16. The entire interior of the vehicle was filled with marijuana smoke. It was absolutely outrageous. While driving, this crew was literally passing around a "bong" (marijuana paraphernalia) that – upon estimate – was at least 12 inches long.

17. Upon parking the truck, Plaintiff immediately approached the site foreman and complained that Plaintiff was: (a) forced to inhale drugs unlawfully; (b) forced to ride in a truck with a driver operating under the influence (a serious safety concern); and (c) extremely concerned about working around this crew anymore, as they all operated heavy machinery on the job site and this crew repeatedly was under the influence of drugs.

18. Plaintiff made it very clear that he was concerned about workplace safety on many levels and expected something to be promptly done about his concerns. The foreman seemed unphased by Plaintiff's complaints, so Plaintiff contacted Defendant's shop manager.

19. The shop manager directed Plaintiff to return to the shop if he felt unsafe, but Plaintiff had to take Uber (at his own cost) because nobody would drive him back to the shop. When Plaintiff arrived at the shop, he was sent home by Defendant's management.

20. After Plaintiff was sent home on or about April 4, 2023, he was told by Human Resources ("HR") (including Ellen Ford – an HR manager) to remain home pending an "investigation."

21. Plaintiff was then contacted and told that he was being sent for a drug test on Friday, April 7, 2023. It was absolutely absurd that Plaintiff was being asked to undergo a drug test, as Plaintiff: (a) was not involved in any workplace accident or incident that would require a drug test; and (b) reported that others were using drugs on company premises and operating machinery and vehicles (in his presence). There was no factual, logical, or business basis to require Plaintiff to take a drug test.

22. When Plaintiff expressed such confusion to Defendant, he was told that it was only fair if others had to take a drug test, that Plaintiff was also required to take one. Although Defendant's explanation lacked logic, Plaintiff was somewhat relieved in that he was led to believe that the crew would be terminated if they tested positive for drugs (as Plaintiff was informed that his crew was being tested as well).

23. Plaintiff had, however, shared with Defendant's management that he had been sober for many years, but that he could not be around drug usage because of his medical history.

24. Plaintiff explained his history of drug addiction / alcoholism, because he believed that it would be a very basic and easy accommodation to not have him around a crew that engages in the use of unlawful drugs in his presence. Plaintiff also felt that it supported his explanation for not wanting to be around drug use.

25. Ford referenced in discussions with Plaintiff about requiring him to undergo a drug test that because he had a drug history, people with his history of drug use "have a penchant to relapse," and that Plaintiff will always be "in recovery."

26. Plaintiff believes that this perception of him was a determinative factor in Defendant's pretextual rationale for his termination (more fully explained *infra*), despite Plaintiff sharing that he had been sober and in treatment for nearly 10 years.

27. Plaintiff was told that he would be picked up and taken for a drug test by Defendant on April 7, 2023. On that date, nobody contacted Plaintiff and, after waiting for quite a while, Plaintiff reached out to Defendant to ask for an update as to when and who was picking him up.

28. Plaintiff was told (by Ford) that nobody could pick him up and instead, Plaintiff was directed to drive to Defendant's location for his drug test.

29. Repeatedly anxious to resume working, Plaintiff promptly drove to Defendant's site on April 7, 2023. Plaintiff had been directed by Ford to meet with Wiesen (Branch Manager).

30. While Plaintiff was *en route*, however, he was contacted by Ford and was told that Wiesen was leaving work early for the holiday (Good Friday). As a result, Plaintiff was told by Ford that they *would "revisit"* the drug test on Monday (April 10, 2023).

31. Everything Defendant did between April 3rd and April 10th was completely mishandled. Plaintiff was sent home, but his crew was not (when it was their drug use that Plaintiff complained of).

32. Defendant's management ostensibly shared Plaintiff's last name with coworkers (during the complaint timeframe), which prompted Plaintiff to receive social media threats.

33. Defendant required Plaintiff to undergo a drug test, even though it was his own complaint about the crew (other than Plaintiff) which prompted Defendant's alleged "investigation."

34. Defendant told Plaintiff that he would be picked up, but failed to show up when it was supposed to bring him to a drug test on April 10, 2023. Plaintiff was then told to drive to the worksite, and mid-drive, was told that he could not be tested that day.

35. Management offered to let Plaintiff return to work on a different crew (which Plaintiff wanted to do), but Plaintiff was being conterminously told by HR that he could not return to work pending the alleged investigation.

36. During the April 3rd to April 10th timeframe, Ford told Plaintiff multiple times that she was apologetic for all the confusion because there were so many miscommunications between her and management.

37. As Plaintiff was the only person continually following up to either take a drug test or get reinstated somehow, Plaintiff sent a text message to Ford on (Monday) April 10, 2023 as follows:

> I want to address the "Safe Work Place" conditions that I raised last Tuesday in person to Chris and Andy and then later on the telephone to Human Resources.
>
> Since then, I have been instructed not to come into work until an investigation has been completed. I have expressed my want to return to work on more than one occasion. It has bene nearly a week and I have not been given a clear answer as to when I can return to work.
>
> Can someone please contact me as to what I need to do to return to work?
>
> Your consideration and assistance in this matter is great appreciated.
>
> Regards,
>
> Patrick Lewis

38. Despite that: (a) nobody picked Plaintiff up on Friday (April 7th) after he waited; (b) Ford told Plaintiff to meet with Wiesen and to drive himself; and (c) Ford told Plaintiff to cease driving because Wiesen had left work early and implied that Plaintiff's drug test would be coordinated on Monday (April 10th) – Plaintiff then received a text message from Ford on April 10, 2023 <u>after</u> the above text message to her, which stated *inter alia*: "We have no choice per policy to terminate based off your failure to comply with the drug testing protocol."

39. Plaintiff was terminated ***immediately after*** sending his text message despite that there was no factual, logical or legal basis for his termination.

40. Expressing frustration, Plaintiff responded to Ford (terminating him) on April 10th via text message as follows:

> I want to be clear. We spoke, at length, several times on Friday. In fact, you told me to head over to meet Chris and I was en route. You then texted me to hold off because Chris was leaving early for the holiday. How can I account for a Manager leaving early for the holiday and not keeping normal hours?
>
> Additionally, your exact words were that we would "revisit" this Monday implying the test would take place today.
>
> I've done my part and stayed in explicit contact by both phone and text.
>
> Are you telling me I'm terminated for bringing to both the Operations Manager and Defendant's Human Resources that I was subjected to working in an unsafe work environment while employees were using drugs in a company vehicle that I was subjected to sit in?

41. Ford did not even bother to dispute Plaintiff's actual account that he did everything right and that he had been in continual contact with Defendant. Instead, Plaintiff was sent a final text message by Ford which stated that if he had any other concerns, Plaintiff could direct them to the employee hotline number.

42. Plaintiff did not call the hotline number because: (a) **he was already terminated** and **no longer an employee**; and (b) Ford was the Regional HR Partner overseeing personnel and termination matters (and thus was a final decision maker). Plaintiff did not believe additional complaints post-termination would make Defendant care any more or less.

43. Defendant's management, including but not limited to Ford, falsely alleged that Plaintiff was terminated for failing to submit to a drug test. Plaintiff never refused to submit to a drug test. Rather, Defendant did everything it could to interfere with Plaintiff's ability to do so.

44. Plaintiff was falsely alleged to have failed to submit to a drug test solely because of his prior history of drug addiction / alcoholism.

45. Plaintiff believes and therefore avers that Defendant terminated his employment because of his *prior* history of drug addiction / alcoholism, even though Plaintiff was not engaging in the illegal use of drugs or alcohol at the time of his termination and was participating in a supervised rehabilitation program.

46. In addition, and/or in the alternative, Defendant terminated Plaintiff's employment based upon its improper perception that Plaintiff was currently using drugs and/or alcohol, as Plaintiff was not.

### First Cause of Action
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination;
[2] Failure to Accommodate; and [3] Retaliation)

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. Defendant discriminated against Plaintiff by terminating him because of his actual, perceived and/or record of disabilities, namely *prior* drug addiction / alcoholism.

49. Specifically, blamed Plaintiff for an offense he did not commit without investigation and simply because of his prior history of drug addiction / alcoholism even though Plaintiff was not engaging in the illegal use of drugs or alcohol at the time of his termination and was participating in a supervised rehabilitation program.

50. Plaintiff requested from Defendant the reasonable accommodation of being placed in a work environment wherein illegal drugs are not consumed. Defendant denied Plaintiff this reasonable accommodation and terminated him for making the request, which constitutes unlawful retaliation.

51. These actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, pension(s), reinstatement, and seniority;

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate, including for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

E. Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Dated: July 11, 2023

10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Patrick J. Lewis | : | CIVIL ACTION |
| v. | : | |
| | : | NO. |
| Brightview Landscape Services, Inc. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (X)

| 7/11/2023 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 8 Plumtree Turn, Levittown, PA 19056

Address of Defendant: 980 Jolly Road, Suite 300, Blue Bell, PA 19422

Place of Accident, Incident or Transaction: Defendant's place of business

---

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes [ ]   No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/11/2023   _____(signature)_____   ARK2484 / 91538
                  *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
[ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
[ ] 2. FELA
[ ] 3. Jones Act-Personal Injury
[ ] 4. Antitrust
[ ] 5. Patent
[ ] 6. Labor-Management Relations
[X] 7. Civil Rights
[ ] 8. Habeas Corpus
[ ] 9. Securities Act(s) Cases
[ ] 10. Social Security Review Cases
[ ] 11. All other Federal Question Cases
    *(Please specify): _____*

B. *Diversity Jurisdiction Cases:*
[ ] 1. Insurance Contract and Other Contracts
[ ] 2. Airplane Personal Injury
[ ] 3. Assault, Defamation
[ ] 4. Marine Personal Injury
[ ] 5. Motor Vehicle Personal Injury
[ ] 6. Other Personal Injury *(Please specify): _____*
[ ] 7. Products Liability
[ ] 8. Products Liability – Asbestos
[ ] 9. All other Diversity Cases
    *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 7/11/2023   _____(signature)_____   ARK2484 / 91538
                  *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LEWIS, PATRICK J.

**DEFENDANTS**
BRIGHTVIEW LANDSCAPE SERVICES, INC.

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION
1. U.S. Government Plaintiff
X 3. Federal Question (U.S. Government Not a Party)
2. U.S. Government Defendant
4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**TORTS - PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**TORTS - PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/Accommodations
- X 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS - Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

**Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Sat TV
- 850 Securities/Commodities/Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN
X 1 Original Proceeding
2 Removed from State Court
3 Remanded from Appellate Court
4 Reinstated or Reopened
5 Transferred from Another District (specify)
6 Multidistrict Litigation - Transfer
8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101)

Brief description of cause:
Violations of the ADA.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes  No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 7/11/2023
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

Print    Save As...    Reset